UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MICHAEL FRANKSTON,

Plaintiff,

v.                                                    Civil Action No.

BRACKETT B. DENNISTON, III, and
DENNIS M. PERLUSS,

Defendants.

~~MAGISTRATE JUDGE~~ New Ming

RECEIPT # _____
AMOUNT $ _____
SUMMONS ISSUED N/A
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY CLK _____
DATE 3/15/05

**NOTICE OF REMOVAL**

Defendant Brackett B. Denniston, III ("Denniston") by his undersigned attorneys,

pursuant to the provisions of 28 U.S.C. §§1332, 1441 and 1446, removes this action to this

Court, and states as follows:

(1)    Plaintiff Michael Frankston ("Plaintiff") initiated this action on September 22, 2004, by

filing a Complaint in the Superior Court Department of the Trial Court of the

Commonwealth of Massachusetts for Middlesex County (Civil Action No. 04-3697-J)

("State Court Action"). Plaintiff filed an Amended Complaint in the State Court Action

on February 16, 2005. The Amended Complaint alleges causes of action for breach of

defendants' duties of care in connection with defendants' legal representation of Plaintiff.

(2)    On February 16, 2005, Denniston received via regular mail a copy of a Summons and the

Amended Complaint. The Summons was not addressed to Denniston, but rather to the

other defendant, Dennis M. Perluss ("Perluss"). The time within which this action may

be removed to the United States District Court for the District of Massachusetts expires

on March 18, 2005, which is 30 days following Denniston's receipt of the Summons and

the Amended Complaint.  28 U.S.C. §1446(b).  A copy of all process and pleadings served upon Denniston is attached hereto as <u>Exhibit 1</u>.

(3)     This is a civil action over which this Court has original jurisdiction under the provisions of 28 U.S.C. §1332, and it may be removed to this Court by Denniston under the provisions of 28 U.S.C. §1441, because it is a civil action between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

(4)     There is complete diversity of citizenship between Plaintiff and defendants.  Plaintiff's Amended Complaint alleges that Plaintiff is an individual who resides in Lincoln, Massachusetts, and is a citizen of Massachusetts, and none of the defendants is a citizen of Massachusetts.  Specifically, Denniston is an individual who resides in Fairfield, Connecticut, and is a citizen of Connecticut, and defendant Perluss is an individual who, upon information and belief, resides in or near Los Angeles, California, and is a citizen of California.

(5)     Upon information and belief, defendant Perluss does not object to the removal of the State Court Action to this Court.

(6)     In his Amended Complaint, Plaintiff alleges that defendants failed to exercise the requisite degree of care and skill of the average qualified attorney specializing in corporate litigation by failing to properly research and file certain claims on Plaintiff's behalf against Plaintiff's business partners in connection with an alleged misappropriation of property belonging to the Plaintiff.  Plaintiff claims damages with regard to the breach

of duty of care by defendants. The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

(7)     Denniston will serve a true and correct copy of this Notice of Removal upon counsel for Plaintiff, defendant Perluss, and the Superior Court Department of the Trial Court of the Commonwealth of Massachusetts, Middlesex County, promptly after the filing of this Notice of Removal, as required by 28 U.S.C. 1446(d).

(8)     By filing this Notice of Removal, Denniston does not waive any defense which may be available to him, specifically including but not limited to, his right to contest the sufficiency of service of process upon him.

(9)     Pursuant to Rule 81.1 of the Local Rules of the United States District Court for the District of Massachusetts, Denniston will, within 30 days of the filing of this Notice of Removal, file in this Court certified or attested copies of all records in the Superior Court Department of the Trial Court of the Commonwealth of Massachusetts for Middlesex County, and a certified or attested copy of all docket entries in the State Court Action.

WHEREFORE, Denniston respectfully give notice that this action has been removed.

BRACKETT B. DENNISTON III

By his attorneys,

John Kenneth Felter, P.C. (BBO #162540)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109
(617) 570-1211

Dated: March 15, 2005

3

## CERTIFICATE OF SERVICE

I, John Kenneth Felter, P.C., hereby certify that on March 15, 2005, I caused a true copy of the foregoing Notice of Removal to be served by first class mail upon Joshua Tropper, Esq., Gambrell & Stolz LLP, Monarch Plaza, Suite 1600, 3414 Peachtree Road NE, Atlanta, GA 30326, counsel for plaintiff in this action and defendant Dennis M. Perluss, California Court of Appeal, Second Appellate District (Division 7), 300 South Spring Street, 2nd Floor, North Tower, Los Angeles, CA 90013.

John Kenneth Felter, P.C.

4

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
(TORT) — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

# COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 04-3697

............... MIDDLESEX ............... , ss
[seal]

Michael Frankston
....................................... , Plaintiff(s)

v.

Brackett B. Denniston, III and
Dennis M. Perluss
....................................... , Defendant(s)

# SUMMONS

To the above-named Defendant: Dennis M. Perluss

You are hereby summoned and required to serve upon ............... Joshua Tropper, ...............

Gambrell & Stolz, LLP, ............... plaintiff's attorney, whose address is Monarch Plaza, Suite 1600

3414 Peachtree Rd., Atlanta, GA 30326 ..........., an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at ............... Cambridge ...............

....................................................................... either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, Suzanne V. DelVecchio, Esquire, at ............... Cambridge ...............

the ............................................... day of ...............................................

...................., in the year of our Lord ....................................... .

Edward J Sullivan

Clerk

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

FORM NO. SUP. — 001

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on ...................................................................................
20........., I served a copy of the within summons, together with a copy of the complaint in this action,
upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5)):

...................................................................................................................................

...................................................................................................................................

...................................................................................................................................

          ...................................................................................................

Dated: ...................................................................................................

**N.B.  TO PROCESS SERVER:**
        **PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS BOX
        ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

( _____ )

( .................................................., .......... )

( _____ )

---

**COMMONWEALTH OF MASSACHUSETTS**

**SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No.04-3697**

MIDDLESEX ........ss.

Michael Frankston ................Plff.

v.

Brackett B. Denniston, III and
Dennis M. Perluss ................Deft.

**SUMMONS**
(Mass. R. Civ. P. 4)

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

SUPERIOR COURT
CIVIL ACTION NO.: 04-3697

MICHAEL FRANKSTON,           )
    Plaintiff                )
                             )
                             )
V.                           )
                             )
                             )
BRACKETT B. DENNISTON, III, and  )
DENNIS M. PERLUSS             )
    Defendants               )

## AMENDED COMPLAINT AND JURY DEMAND

### PARTIES

1.    The plaintiff, Michael Frankston ("Frankston"), is an individual with a residence
      address of 170 Tower Road, Lincoln, Massachusetts.

2.    The defendant, Brackett B. Denniston, III ("Denniston"), is an individual residing in
      Fairfield, Connecticut.

3.    The defendant, Dennis M. Perluss ("Perluss") is an individual residing in or near Los
      Angeles, California.

### FACTS

4.    In or about November 1986, Frankston and several other individuals purchased
      shares of stock in a company called Innovative Information Systems ("IIS") that was
      controlled by one of those individuals, Harry Kurtzman ("Kurtzman").

5.    At Kurtzman's urging, in or about February 1987, Frankston and the other individual investors, Patrick Glenn, Neal Kaufman, Cipora Kurtzman, Harry Kurtzman and Arthur Schwartz ("the individual partners"), in IIS formed a partnership ("the partnership") to purchase shares of stock in a company called Anchor Growth Corporation ("Anchor Growth") in the expectation that Anchor Growth would merge with IIS and that the newly formed company would result in a profit for the individual partners.

6.    It was agreed that the individual partners would purchase different amounts of free-trading stock in Anchor Growth at different times and for different prices but that the profits resulting from the investments would be divided equally. It was also agreed that if the shares of the post merger company could be sold at a profit, the partnership would lend those profits to the post merger company if and when needed for operating capital. It was further agreed that Kurtzman would be responsible for keeping track of the partnership transactions to insure that each individual partner was treated fairly.

7.    On February 27, 1987, IIS and Anchor Growth merged into a new company called Aura Systems, Inc. ("Aura"). All of the pre-merger stock of IIS and all the free-trading shares of Anchor Growth became Aura stock ("the partnership stock") and the individual partners assumed management and director roles with Aura.

8.    Unbeknownst to Frankston at the time, some of the other partners sold some of their free-trading Aura shares in or around March 1987.

9.    In April 1988, when asked to do so by Kurtzman, Frankston began selling his shares of partnership stock in Aura as agreed and lending the profits to Aura.

10. In the summer of 1998, Kurtzman informed Frankston that Aura was preparing to sell a large number of shares to a group of investors ("the private placement"). At Kurtzman's suggestion, the six partners agreed that Aura could then issue 40,000 shares of Aura stock to each of the individual partners ("the partnership debt shares") as partial repayment for the loans that had been made by the individual partners.

11. From time to time throughout 1987 and early 1988, Frankston asked Kurtzman for an accounting of the partnership and its loans to Aura. Kurtzman repeatedly assured Frankston that he would prepare such an accounting. On November 1, 1988, Kurtzman finally showed Frankston such a preliminary accounting. Although it seemed to be incomplete and incorrect in some details, the general methodology of this preliminary accounting was acceptable.

12. In late 1988, at Kurtzman's request, Frankston also sold off his remaining shares of partnership stock. He was not asked to lend any of the proceeds of those sales to the company at that time, so he retained the monies in case he was later asked to lend it to Aura.

13. By the fall of 1988, Frankston became dissatisfied with the manner Kurtzman was running Aura. He decided to end his relationship with Aura, submitted his resignation from Aura's Board of Directors in January 1989, and began selling off some of his remaining Aura stock. Knowing that there were legal restrictions applicable to the sale of some or all of his Aura stock, Frankston consulted the law firm of Goodwin, Procter & Hoar, in which Denniston was a partner, for help in

making sure all of his stock sales fully complied with all legal and regulatory requirements.

14. The private placement was completed and Aura filed several publicly available documents with the SEC indicating that the private placement had been completed and that the loans from the officers and directors had been paid off, even though in fact most of Frankston's loans to Aura had not yet been repaid.

15. By March of 1989, Frankston had still not received any of the money owed him by Aura. Although his agreement with Aura had always been that the loans would not be due until the company could afford to pay him, Frankston thought that it would be wise to reach agreement on the extent of Aura's outstanding obligations to him.

16. On or about March 1, 1989, Frankston prepared a detailed statement of the amounts he thought Aura would agree were due to him, including the amounts of cash and stock that would be due if Kurtzman's November 1, 1988, preliminary accounting were correct in its statements about how much each of the other partners had bought, sold and loaned to Aura.

17. Denniston insisted that Frankston remove all references to the stock pool from the proposed account statement, and insisted that Frankston not even ask about it. Frankston complied with his attorney's instructions, and sent a revised account statement to Aura without any reference to any stock pool transactions on or about March 13, 1989. Aura never made any response to Frankston's account statement.

18.  In April of 1989, Aura filed a publicly available SEC S-1 form that stated that each of the individual partners other than Frankston had received 48,000 shares of Aura stock in connection with the private placement. The S-1, which was not sent to Frankston, stated that the 48,000 shares issued to each of the other partners was in satisfaction of unspecified indebtedness to them.

19.  Frankston never received any shares in connection with the private placement nor did he receive any cash distributions from the partnership.

20.  In fact, the individual partners had wrongfully taken the 40,000 shares promised to Frankston and divided them amongst themselves in the fall of 1988. At about the same time, Aura repaid loans that had been made by the partners from the proceeds of the sale of partnership stock, and all of the money due to Frankston as a part of that distribution was diverted by Kurtzman to his sister Cipora Kurtzman.

21.  On or about March 13, 1991, after investigating the matters raised by Frankston, Denniston filed a Complaint against Aura and some of its affiliates in the United States District Court for the District of Massachusetts for repayment of the amounts shown on Frankston's March 1989 account statement as being due to him (the "collection action"). Despite Frankston's request, Denniston remained adamant that the Complaint in the collection action make no reference to the stock pool or to any transaction involving the pool.

22. Aura responded to the Complaint in the collection action by moving to transfer the action to the Central District of California, for the convenience of the defendants and defense witnesses. After that motion was granted, Denniston encouraged Frankston to hire Perluss, then a partner in the law firm of Hufstedler, Kaus & Ettinger, to act as local counsel in the case.

23. On several more occasions after engaging Perluss, Frankston raised the issue with Denniston and Perluss that the existence of the stock pool was sure to arise in discovery in the collection action, so that excluding it entirely from the case would probably not be possible and trying to do so might negatively affect his credibility.

24. After learning from independent sources that the individual partners had in fact stolen the 40,000 shares promised to him, Frankston brought this new information to the attention of Denniston and Perluss as his attorneys in his litigation against Aura, Frankston again asked them to include a claim for his 40,000 shares in the collection action. Denniston and Perluss each again refused, and Denniston threatened to withdraw as Frankston's counsel in the collection action if he persisted in raising the subject. Neither Denniston nor Perluss ever warned Frankston that the statute of limitation on any claim relating to the stock pool was running out.

25. By the end of 1992, Frankston was becoming increasingly dissatisfied about the way the collection action was being handled by Perluss, who did not appear to be supervising the work of the associate in his firm who seemed to have been given primary responsibility for the case. Over Denniston's objections, Frankston fired Perluss and engaged the law firm of Lee & Tropper ("L&T") to replace Perluss's firm in early 1993.

6

26. As part of his efforts to inform L&T about the issues in the collection action, Frankston explained about the stock pool as well, and about his frustration about Denniston's and Perluss's refusal to include the claim, although it was then worth hundreds of thousands of dollars.

27. L&T undertook an independent investigation into the factual and legal basis of Frankston's claims for a share of the stock pool's profits, and into Denniston's emphatically stated belief that the stock pool was a criminal activity that would be prosecuted by the S.E.C. if ever mentioned. Those investigations led to the conclusion that a large portion of the value of the stock pool could be claimed in the collection action without any risk to Frankston by accurately describing Kurtzman's promise on November 1, 1988, to issue 40,000 new shares to Frankston as part of the agreement between Frankston and Aura as to how Aura would satisfy its debts to Frankston.

28. L&T's efforts to include the value of the promised 40,000 shares in the collection action were stymied, however, by a September 1993 court order dismissing the entire collection action on Aura's motion for summary judgment, on the ground that the collection action was untimely under California's statute of limitation.

29. Although the dismissal was later reversed on appeal, because Frankston's claims were actually governed by Massachusetts's statutes of limitation rather than California's, Frankston was concerned in 1993 that his still-unasserted claims relating to the stock pool could be untimely if he waited for the outcome of his appeal in the collection action. Frankston therefore filed a separate claim (the "partnership action"), in June 1994, in the Superior Court of the State of California,

7

in and for the County of Los Angeles, for a partnership accounting and related torts, against the five partners who had stolen his stock in October 1988. Neither Denniston nor Perluss, nor any other attorneys in either of their firms, acted as attorney for Frankston in the partnership action after it was filed; however, Denniston and his firm continued as co-counsel in the appeal of the collection action.

30.   In the summer of 1995, Frankston moved in the partnership action for summary adjudication (the California equivalent of partial summary judgment) of his entitlement to an accounting for the stock pool's assets and profits. The defendant partners filed a cross-motion for summary judgment alleging (among other defenses) that the relevant statutes of limitations had run on Frankston's claims (three years for the fraud and conversion claims and four years for the beach of fiduciary duty claims) contending that Frankston knew or should have known at the latest by the beginning of 1989 that he had potential claims against the individual partners.

31.   In his opposition to the summary judgment motion, Frankston argued that he did not learn about the potential for a claim against the individual partners until late 1992, when for the first time he saw documents produced in other litigation indicating that his 40,000 shares had been taken and divided amongst the other individual partners.

32.   The trial court agreed and denied the motion for summary judgment on October 31, 1995. The court also granted Frankston's motion, establishing that he was entitled to a partnership accounting. The accounting itself, as well as Frankston's tort claims, were preserved for trial.

33. On July 7, 1999, after a trial spanning almost two full months, a jury found in favor of Frankston and on July 13, 1999, the jury returned a separate verdict assessing punitive damages against all five defendant partners. After further briefing on various accounting issues reserved to the court, on August 1, 2000, the Court entered judgment against the individual partners jointly and severally for $646,084.00 in compensatory damages and prejudgment interest in the amount of $575,053.50, plus separate awards against Harry and Cipora Kurtzman totaling $98,794 and a total of $257,500 in punitive damages against the five defendant partners. Cost awards and discovery sanctions totaling $123,193.55 were added later.

34. The individual partners appealed the judgments raising again the statute of limitations issue.

35. On September 22, 2003, the Court of Appeal in California reversed the judgment based on its agreement with Appellants that the relevant statutes of limitations had run before the suit was brought. Specifically, the Court held that the acts which gave rise to Frankston's causes of action (the wrongful dividing of Frankston's assets amongst themselves) occurred in the fall of 1988 and that the evidence was "susceptible to only one legitimate inference showing Frankston had constructive notice of his claims not later (than) the spring of 1989."

36. The Court of Appeal further stated that Frankston's failure to obtain actual notice resulted from his own "failure to review information in company SEC documents readily available to him."

9

37.    Frankston's petition for rehearing in the Court of Appeal, petition for review by the California Supreme Court, petition for writ of *certiorari* from the Untied States Supreme Court, and even motion for new trial in the original trial court, have all been refused.

### COUNT I – Brackett Denniston

38.    The plaintiff reiterates the allegations contained in paragraphs 1 through 37 of the Complaint and incorporates them herein by reference as if set forth in full.

39.    Brackett Denniston was required to exercise the requisite degree of care and skill of the average qualified attorney specializing in corporate litigation in his representation of Frankston.

40.    Brackett Denniston acted in breach of his duty of care when he:  1) failed to investigate reasonably in a timely manner the underlying factual basis for Mr. Frankston's claims;  2) failed to research reasonably the viability of all of the potential claims available to Mr. Frankston; 3) failed to file Mr. Frankston's claims against the individual partners relating to their taking of his share of partnership distributions before the statute of limitations expired; and 4) failed to advise or warn Frankston that the statutes of limitation applicable to his claims relating to the stock pool would elapse no later than early 1993.

41.    Had Denniston not failed to take the aforedescribed actions within the period of the statute of limitations, Frankston would have brought those claims in a timely manner and been entitled to recover the $ 1,700,625.05 judgment that was entered by the trial court in California on August 1, 2000.

42.    As a direct result of Brackett Denniston's breach of the duty of care, Michael

Frankston suffered economic damages in the amount of the judgment that was taken

away by the Court of Appeal due to Denniston's failure to file the underlying case in

a timely way.

WHEREFORE, the plaintiff, Michael Frankston, requests this Court:

(1)    Enter judgment for Michael Frankston on Count I against the defendant,

Brackett Denniston in the amount of $ 1,700,625.05, which reflects the total amounts of the

judgments entered by the trial court, plus interest, costs and reasonable attorney's fees; and

(2)    Award such other relief as this Court may deem appropriate.


## COUNT II – Dennis Perluss

43.    The plaintiff reiterates the allegations contained in paragraphs 1 through 42 of the

Complaint and incorporates them herein by reference as if set forth in full.

44.    Perluss was required to exercise the requisite degree of care and skill of the average

qualified attorney specializing in corporate litigation in his representation of

Frankston.

45.    Perluss acted in breach of his duty of care when he:  1) failed to investigate

reasonably in a timely manner the underlying factual basis for Mr. Frankston's

claims; 2) failed to research reasonably the viability of all of the potential claims

available to Mr. Frankston; 3) failed to file Mr. Frankston's claims against the

individual partners relating to their taking of his Partnership Debt Shares and cash

share of partnership distributions before the statute of limitations expired; and 4)

failed to advise or warn Frankston that the statutes of limitation applicable to his claims relating to the stock pool would elapse no later than early 1993.

46.     Had Perluss not failed to take the aforedescribed actions within the period of the statute of limitations, Frankston would have brought those claims in a timely manner and been entitled to recover the $ 1,700,625.05 judgment that was entered by the trial court in California on August 1, 2000.

47.     As a direct result of Perluss's breach of the duty of care, Michael Frankston suffered economic damages in the amount of the judgment that was taken away by the Court of Appeal due to Perluss's failure to file the underlying case in a timely way.

WHEREFORE, the plaintiff, Michael Frankston, requests this Court:

(1)     Enter judgment for Michael Frankston on Count II against the defendant, Dennis Perluss in the amount of $ 1,700,625.05, which reflects the total amounts of the judgments entered by the trial court, plus interest, costs and reasonable attorney's fees; and

(2)     Award such other relief as this Court may deem appropriate.

JURY DEMAND

THE PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS MADE HEREIN.


MICHAEL FRANKSTON

By His Attorneys,

GAMBRELL & STOLTZ, LLP


Joshua Tropper
Monarch Plaza, Suite 1600
3414 Peachtree Road NE
Atlanta, GA 30326
(404) 577-6000
BBO #652921


DATED 2/16/05

13

Commonwealth of Massachusetts
County of Middlesex
The Superior Court

CIVIL DOCKET# **MICV2004-03697-J**

RE:    Frankston v Denniston, III et al

TO: Ronald M Davids, Esquire
Davids & Schlesinger
40 Washington Street
Suite 250
Wellesley Hills, MA 02481

### TRACKING ORDER - A TRACK

You are hereby notified that this case is on the average (A) track as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
|---|---|
| Service of process made and return filed with the Court | 02/19/2005 |
| Response to the complaint filed (also see MRCP 12) | 02/19/2005 |
| All motions under MRCP 12, 19, and 20 filed | 02/19/2005 |
| All motions under MRCP 15 filed | 12/16/2005 |
| All discovery requests and depositions completed | 11/11/2006 |
| All motions under MRCP 56 served and heard | 01/10/2007 |
| Final pre-trial conference held and firm trial date set | 05/10/2007 |
| Case disposed | 09/22/2007 |

The final pre-trial deadline is **not the scheduled date of the conference.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to session J sitting **in Rm 9B (Cambridge), Middlesex Superior Court.**

Dated: 12/21/2004

Edward J. Sullivan
Clerk of the Courts

Location: Rm 9B (Cambridge)
Telephone: 617-494-4010 EXT 4274

BY: James Lynch
Assistant Clerk

Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130

## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only)  **Michael Frankston v. Brackett B. Denniston III, et al.**

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(2)).

   ☐ I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   ☐ II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,     Also complete AO 120 or AO 121
           740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.      for patent, trademark or copyright cases

   ☒ III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
           315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
           380, 385, 450, 891.

   ☐ IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
           690, 810, 861-865, 870, 871, 875, 900.

   ☐ V.    150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court

   _____ None _____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

   YES ☐    NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC § 2403)

   YES ☐    NO ☒

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

   YES ☐    NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

   YES ☐    NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? – (See Local Rule 40.1(d)).

   YES ☐    NO ☒

   A. If yes, in which division do all of the non-governmental parties reside?

   Eastern Division ☐        Central Division ☐        Western Division ☐

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

   Eastern Division ☒        Central Division ☐        Western Division ☐

8. If filing a Notice of Removal – are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

   YES ☐    NO ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME_____ John Kenneth Felter, P.C. _____

ADDRESS___ Goodwin Procter LLP, Exchange Place, Boston, MA   02109 ___

TELEPHONE NO.____ 617-570-1211 _____

(Cover sheet local.wpd - 10/17/02)
LIBA/1300586.1

%JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)   PLAINTIFFS

Michael Frankston

### DEFENDANTS

Brackett B. Denniston III and Dennis M. Perluss

**(b)** County of Residence of First Listed Plaintiff   Middlesex
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)   Joshua Tropper
Gambrell & Stolz, LLP
3414 Peachtree Rd. NE, Suite 1600
Atlanta, GA 30326 Tel. 404-577-6000

Attorneys (If Known)  John Kenneth Felter, P.C.
Goodwin Procter LLP
Exchange Place
Boston, MA 02109  Tel. 617-570-1211

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☒ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☒ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN   (Place an "X" in One Box Only)

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. section 1332, 1441, 1446
Brief description of cause:
Legal malpractice

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ more than $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE   March 15, 2005

SIGNATURE OF ATTORNEY OF RECORD   *John Kenneth Felter*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____