UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL FRANKSTON, | ) |
| Plaintiff, | ) CIVIL ACTION NO. |
| | ) 05-10495-REK |
| v. | ) |
| BRACKETT B. DENNISTON, III, And DENNIS M. PERLUSS, | ) |
| Defendants. | ) |

## MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

The motion of defendant Dennis M. Perluss to dismiss the complaint as untimely should be denied because the complaint was filed within one year of the accrual of plaintiff's claim against Perluss for professional malpractice.

Perluss's motion is based on the fundamentally mistaken premise that this action is based on Perluss's inept handling of a collection suit against a California company, in which Perluss was one of plaintiff's attorneys from 1991-1993. That collection suit, however, is not the underlying case from which this complaint springs; it is mentioned in the complaint only to provide background context and to explain how and why an attorney-client relationship developed between plaintiff and Perluss. The complaint here does not allege that plaintiff suffered any harm as a result of Perluss's representation of him in that collection suit.

Much of Perluss's memorandum, defending as it does against a claim that has not been asserted, offers little guidance to the court on how to frame, let alone how to decide, the issues presented here. This memorandum will attempt to clarify the issues actually at stake in this case.

- 1 -

## I. **WHAT THIS CASE IS ABOUT**

The complaint may be summarized, for purposes of this motion, as alleging:

- In early 1997, plaintiff joined an investment partnership which invested in Aura Systems, Inc., a company controlled by the partners. Complaint, ¶¶ 4-6.

- Plaintiff's partners wrongfully took a profit distribution in October 1988 without informing plaintiff. Plaintiff did not learn about the distribution until late 1992. Complaint, ¶¶ 20, 24.

- In early 1989, not yet knowing that any amounts were actually due to him from either Aura or his partners, plaintiff consulted the firm then known as Goodwin, Procter & Hoar ("GP&H") about how best to preserve his rights to collect what was owed to him, if and when the debts came due. Complaint, ¶ 13.

- Defendant Brackett B. Denniston, III, then a GP&H partner, approved sending a statement to Aura concerning corporate obligations to plaintiff, but instructed plaintiff not to make any inquiries or demands of any sort concerning the investment partnership.[1] Complaint, ¶¶ 16-17.

- Unknown to plaintiff, Denniston had not done adequate research into either the facts or the law applicable to plaintiff's right to collect a share of whatever profits the partnership might eventually realize. Complaint, ¶¶ 39-40.

- In March 1991, GP&H filed a collection suit in this District against Aura on plaintiff's behalf. At Denniston's insistence, the collection suit avoided any

---

[1] Now known as Goodwin, Procter, LP, plaintiff's former law firm has appeared in this action as counsel for Denniston, and has expressed an intention to disclose privileged and confidential communications to him, all in defiance of plaintiff's written objections. These apparent ethical lapses are not directly at issue on this motion, but it should be clear that plaintiff does not waive any of his objections to Goodwin, Procter's conduct.

-2-

reference to the investment partnership. Complaint, ¶ 21.

- When the collection suit was transferred to the Central District of California in late 1991, Denniston encouraged plaintiff to engage Perluss, then a partner in the Los Angeles firm of Hufstedler, Kaus & Ettinger, as local counsel. Complaint, ¶ 22.

- Plaintiff asked Perluss about the investment partnership, in the hope of obtaining an independent second opinion. Perluss endorsed Denniston's advice and instructions. Complaint, ¶¶ 23-24. Unknown to plaintiff, Perluss also did so without adequate legal or factual research into how best to protect plaintiff's rights. Complaint, ¶ 45.

- In late 1992, plaintiff discovered the wrongful profit distribution his partners had taken in 1988. Plaintiff brought this information to Denniston and Perluss, who still advised him not to do anything about it. Neither Denniston nor Perluss advised plaintiff that his knowledge of misconduct by his partners on a specific date in 1988 meant that the applicable statutes of limitation had started running against him. Neither Denniston nor Perluss advised plaintiff that one or more of the applicable statutes would elapse in the near future if he continued to follow their instructions and do nothing. Complaint, ¶ 24.

- In early 1993, dissatisfied with Perluss's failure to supervise the work of a very junior associate who had been assigned to work on the collection suit, plaintiff fired Perluss and hired the law firm of Lee & Tropper (L&T) to continue prosecution of the collection suit. Complaint, ¶ 25.

- Plaintiff later also engaged L&T to assert claims against his partners, for an

- 3 -

accounting and for torts arising from their secret 1988 profit distribution. Complaint, ¶ 29. Neither plaintiff nor his new attorneys were aware that the failure of Denniston and Perluss to have performed basic research created any risk; because all of plaintiff's claims against his partners were governed by the "discovery rule" under California law, the filing of the partnership action in state court in California in June 1994 appeared to be timely in light of plaintiff's discovery of the facts in late 1992. Complaint, ¶¶ 30-31.

- Successor counsel were initially successful in the partnership action, obtaining (1) in 1995 a summary adjudication of plaintiff's entitlement to an accounting over the partners' unfounded assertions that the claim was untimely; (2) in 1999 jury verdicts (a) that plaintiff had not been aware of facts putting him on notice of his claims before 1992 and (b) that his partners had committed fraud, conversion and breach of fiduciary duty entitling plaintiff to compensatory and punitive damages; and (3) in 2000 (a) a finding by the trial court on the accounting that plaintiff had not been aware of facts putting him on notice of his claims before 1992; and (b) a judgment against the partners exceeding $1.5 million. Complaint, ¶¶ 32-33.

- On the partners' appeal, the California Court of Appeal reversed the judgment on September 22, 2003, and ordered entry of judgment in the partners' favor, concluding (a) that the partnership had been dissolved in early 1989 when its business had been substantially completed and (b) that plaintiff would have learned about his tort claims against his partners in early 1989 if he had read documents filed by Aura with the S.E.C., which the court considered that any reasonable person in plaintiff's situation had a duty to read. Complaint, ¶¶ 34-36.

- All plaintiff's efforts to obtain redress in the partnership action have been rejected. Complaint, ¶ 37.

## II. THE APPLICABLE LAW

### A. Massachusetts Law Governs

This action was initially filed in the Massachusetts Superior Court, and was removed to this court on the basis of diversity of citizenship. Therefore, Massachusetts choice of law rules apply, *St. Paul Fire & Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP*, 233 F.Supp. 2d 171, 175, and the Massachusetts statute of limitation governs. *Cain v. Kramer*, 2002 U.S.Dist. LEXIS 1770, 825. Moreover, because both parties agree that the law of the forum state may be applied,[2] this court should apply that law. *O'Diah v. Volkswagen of America, Inc.*, 91 Fed. Appx. 159, 160 (1st Cir. 2004).

### B. The Massachusetts Statute of Limitation For Attorney Malpractice Is Three Years From The Date of Injury

The parties agree that this action is subject to the three-year limitation in M.G.L. c. 260, § 4.[3] The statute does not say when that three-year period starts running, but the courts have established that a claim accrues when the plaintiff suffers an injury. *Wolinetz v. Berkshire Life Ins. Co.*, 361 F.3d 44, 47 (1st Cir. 2004); *Joseph A. Fortin Construction, Inc. v. Mass. Housing Finance Agency*, 392 Mass. 440, 442, 466 N.E.2d 514, 516

---

[2] Perluss's memorandum discusses California law at some length despite assertion that Massachusetts law governs, possibly as an alternative in case plaintiff argued for the application of California law. Although this court *need* not attend to either party's analysis of California law, plaintiff will also include appropriate references to California law, out of abundance of caution.

[3] The applicable California statute, Cal. Code Civ. Proc. § 340.6, is quite different: the earlier of one year from discovery or four years from the wrongful act; also, the burden of proof is on the defendant to show that the one-year statute is applicable. *Samuels v. Mix*, 22 Cal.4th 1, 5, 989 P.2d 701, 703, 91 Cal. Rptr. 2d 273, 275 (1999).

(1984).[4] Unlike most personal injury cases, when the injury occurs at the time of the negligent act causing it, attorney malpractice rarely causes immediate injury and often causes no injury at all. "Negligence in the abstract," without any resulting injury, or creating only the mere possibility of future injury does not create a cause of action. *Joseph A. Fortin, supra,* 392 Mass. at 443, 466 N.E.2d at 516; *Cigna Ins. Co. v. Oy Saunatec, Ltd.*, 59 F.Supp.2d 163, 164-165 (D.Mass. 1999).[5]

In an action for professional malpractice, the plaintiff must prove that he would have obtained a better result *but for* the defendant attorney's negligence. *Wehringer v. Powers & Hall, P.C.*, 874 F.Supp. 425, 427 (D.Mass.), *aff'd,* 65 F.3d 160 (1st Cir. 1995). Therefore, until there is some outcome resulting from the negligence, no malpractice action has accrued, and a claim filed before injury is sustained is subject to dismissal as premature. *Id.* at 427-428.[6]

Pursuant to the "discovery rule," a cause of action for malpractice does not accrue "for limitation purposes until the plaintiff knew or should have known that he has been harmed by the defendant's conduct." *Williams v. Ely*, 423 Mass. 467, 473, 668 N.E.2d 799, 804 (1996). Therefore, where the plaintiff discovers the defendant's negligence early enough in the underlying action to reasonably believe that no harm has yet been done, there is no malpractice claim until the underlying action is concluded. *Wehringer,*

---

[4] In contrast, California's statute may *start* running before the plaintiff suffers actual injury, but is tolled until injury is sustained. C.C.P. § 340.6(a)(1).

[5] California is in accord: "Thus, we must distinguish between an actual, existing injury that might be *remedied or reduced* in the future, and a speculative or contingent injury that might or might not *arise* in the future." *Jordache Ents., Inc. v. Brobeck, Phleger & Harrison*, 18 Cal.4th 739, 754, 958 P.2d 1062, 1072-1073, 76 Cal. Rptr. 2d 749, 759-760 (1998).

[6] California law differs; the cause of action accrues at the time of the malpractice, but the statute of limitation is tolled until the plaintiff sustains actual injury. C.C.P. § 340.6(a)(1).

*supra; Spilios v. Cohen*, 38 Mass. App. Ct. 338, 339-340, 647 N.E.2d 1218, 1219-1220 (1995).

When actual injury was suffered, and when the plaintiff learned or reasonably should have learned about it, are questions of fact for the jury. *Wolinetz v. Berkshire Life Ins. Co.*, 361 F.3d 44, 48 (1st Cir. 2004); *Patsos v. First Albany Corp.*, 433 Mass. 323, 329, 741 N.E.2d 841, 847 (2001).[7] Where the defendant's conduct caused the plaintiff to remain in ignorance of either the negligence or the injury caused by it, the defendant is estopped from asserting the statute of limitation as a defense. *Riley v. Presnell*, 409 Mass. 239, 245-246, 565 N.E.2d 780, 786 (1991).[8]

### C. A Motion to Dismiss Based on a Statute of Limitation Should Be Denied Unless There Is No Theory Under Which Plaintiff's Claim Could Be Timely

When considering a motion to dismiss, the court should treat "all well-pleaded factual allegations as true and drawing all reasonable inferences in the plaintiff's favor." *O'Diah v. Volkswagen of America, Inc.*, 91 Fed. Appx. 159, 160 (1st Cir. 2004). The motion should be denied unless "the pleader's allegations leave no doubt that an asserted claim is time-barred." *Id.* If the complaint suggests facts "sufficient to justify recovery on any cognizable theory," the motion should be denied. *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 508 (1st Cir. 1998). Leave to amend should be allowed if the plaintiff has not, but could have, pleaded facts sufficient to state a claim. *Friedman v.*

---

[7] California is in accord: "The determination of the time when plaintiff suffered damage is a question of fact. [citation] Moreover, in some cases, only the trier of fact can ascertain when the consequential damage became sufficiently appreciable to put a reasonable person on notice." *Day v. Rosenthal*, 170 Cal.App.3d 1125, 1164, 217 Cal. Rptr. 89, 114 (1985).

[8] Under California law, "it is enough if the party has been induced to refrain from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss." *Lantzy v. Centex Homes*, 31 Cal.4th 363, 384, 73 P.3d 517, 533, 2 Cal. Rptr. 2d 655, 673 (2003).

*Jablonski,* 371 Mass. 482, 488, 358 N.E.2d 994, 998 (1976).

### III. APPLICATION OF THE LAW TO PLAINTIFF'S ALLEGATIONS

#### A. Plaintiff Did Not Suffer Appreciable Injury Until September 1993

Even without the benefit of the "discovery rule," plaintiff cannot have suffered any harm as a result of defendants' negligence before October 20, 1991 (three years from the theft by his partners), because all his claims would unambiguously have been timely before then. Between October 20, 1991, and October 31, 1995, when the trial court summarily adjudicated that the accounting claim *was* timely (Complaint, ¶ 32), plaintiff was subject to the risk that defendants' negligence might cause harm if a court determined that he should have learned about his claims sooner than he did, but that risk itself was not an actionable injury. Between October 31, 1995, and September 22, 2003, when the California Court of Appeal ruled that plaintiff should have known about his claims as far back as the spring of 1993 (Complaint, ¶ 35), plaintiff suffered no injury. Only on September 22, 2003, did plaintiff suffer any actual injury.

#### B. Plaintiff Could Not Have Brought Malpractice Claims Before 2003

The California appellate decision, a printout of which is attached to Perluss's motion, shows that plaintiff's claims against his investment partners were ultimately unsuccessful because of plaintiff's failure to review Aura's S.E.C. filings in early 1989, more than five years before the action was filed. Plaintiff alleges that this result was caused by four separate failures of Perluss (Complaint, ¶¶ 45-46):

(1)   failure to investigate the factual basis of his potential claims – had Perluss investigated, he would have learned about the S.E.C. filings that plaintiff was later found to have had a duty to review;

(2)  failure to research the legal basis of his potential claims – had Perluss researched plaintiff's claims, he would have known there was no sound basis for advising against asserting them;

(3)  failure to assert plaintiff's claims while unambiguously timely – had Perluss asserted plaintiff's claims, there would have been no serious risk of being held untimely (the partners might well still have raised limitations as a defense, along with all the frivolous defenses they did raise, but plaintiff would not have suffered any harm attributable to the specified acts of negligence by Perluss even if the partners were successful); and

(4)  failure to warn plaintiff that the statutes of limitation would soon elapse – had Perluss advised plaintiff of the risks of delay, plaintiff could have engaged other attorneys while there was still time to do so.

Perluss contends that plaintiff had notice of his malpractice claims at some time in 1993 or 1994, arguing that plaintiff must have learned that his claims were untimely by then.[9] However, being aware of a negligent act is not enough to create a cause of action as long as there has been no actual injury. Not having learned about the facts giving rise to plaintiff's claims against his partners until 1992, those claims would be timely on the basis of the "discovery rule" as long as his failure to discover the facts sooner was reasonable. Therefore, defendants' failures to assert those claims sooner, defendants'

---

[9] Perluss bases this contention on a passage lifted from the complaint out of context, saying that plaintiff "'was concerned in 1993' that his 'still-unasserted claims . . . could be untimely.'" What the sentence partially quoted by Perluss from ¶ 29 of the complaint actually says is that plaintiff was concerned in 1993 that his claims might later become untimely "if he waited for the outcome of his appeal in the collection action," which could easily have been two or three more years. Nothing in the complaint suggests that plaintiff had any reason to suspect that his claims were already untimely in 1993.

failures to do adequate legal research to determine the appropriateness of asserting the claims sooner, and even defendants' failures to advise plaintiff about the imminent expiration of the limitations period, caused no immediate harm to plaintiff. That negligence created only a risk that plaintiff might suffer harm in the future, if a court determined that plaintiff should have learned the facts sooner than he actually did.

The adverse appellate decision makes it clear that the fundamental cause of plaintiff's eventual injury was defendants' failure to investigate the factual basis of plaintiff's potential claims. The Court of Appeal found that plaintiff should have sued his partners sooner because he should have learned about their wrongdoing sooner. Had defendants made reasonable inquiries on plaintiff's behalf, plaintiff would have learned about his partners' treachery sooner and would have been in a position to hire different counsel if these defendants refused to assist him.[10]

Perluss should be estopped from asserting the statute of limitation as a defense in this action, because the very fact that plaintiff followed his unfounded instructions and made no independent investigation himself delayed plaintiff from discovering the facts showing that he had viable claims against his partners until 1992. *Riley v. Presnell*, 409 Mass. 239, 245-246, 565 N.E.2d 780, 786 (1991).[11] Where a plaintiff's reliance on the advice of counsel is not considered sufficient to extend a statute of limitation under the "discovery rule," the courts recognize the propriety and timeliness of an action for

---

[10] Of course, if defendants had done adequate legal research, they would not have refused to assist him, because their refusal was a result of their mistaken understanding of the applicable law.

[11] One California court recognized as a "classic case of estoppel" a case in which an attorney gave advice, intending that the client rely on it, the client was unaware of the legal ramifications and relied on its attorney's advice to its detriment. *Leasequip, Inc. v. Dapeer*, 103 Cal.App.4th 394, 404, 126 Cal. Rptr. 2d 782, 789-790 (2002).

malpractice to recover what the attorneys' negligence prevented plaintiff from collecting from the defendants in the underlying action. *Friedman v. Jablonski,* 371 Mass. 482, 486 n. 4, 358 N.E.2d 994, 997 n. 4 (1976).[12]

## IV. REASONS WHY THE MOTION SHOULD BE DENIED

### A. Perluss's Inadequate Supervision of His Associate In The Collection Action Had Nothing To Do With Plaintiff's Loss In The Partnership Action

Perluss argues that his failure to supervise the associate who was working with him on the collection action somehow put plaintiff "on sufficient notice of both Perluss's alleged negligence and the harm that purportedly flowed from it" more than three years before this action was filed. Perluss's Memorandum at 3. This is no more valid than an argument that discovery of a loose nail in the roof of one new building put the owner on notice of both the builder's "negligence and the harm that purportedly flowed from it" sufficiently to bar a suit for damages caused by the collapse of a different structure several years later. Any apparent relationship is purely coincidental.

The cost of hiring a new attorney does not constitute "harm" unless the client "expends additional legal fees to ameliorate the harm caused by [his original attorney's] error." *Rosen Construction Ventures, Inc. v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.,* 364 F.3d 399, 405 (1st Cir. 2004), quoting *Levin v. Berley,* 728 F.2d 551, 554 (1st Cir. 1984) (but for defendant's error, no additional legal proceedings requiring the hiring of an attorney would have been anticipated); *Sullivan v. Utica Mutual Ins. Co.,* 439 Mass. 387, 411, 788 N.E.2d 522, 542 (2003) (harm found "where the plaintiff incurs additional fees and expenses necessary to ameliorate the harm that would not have

---

[12] California is in accord: "By this means, the attorney who caused the delay, rather than the 'innocent' defendant, is charged with its consequences." *Gutierrez v. Mofid,* 39 Cal. 3d 892, 900, 705 P.2d 886, 891, 218 Cal. Rptr. 313, 318 (1985).

- 11 -

occurred but for the attorney's negligence"); *Mass. Elec. Co. v. Fletcher, Tilton & Whipple*, 394 Mass. 265, 268, 475 N.E.2d 390, 391 (1985) (plaintiff incurred expenses to defend a claim "based in part on the alleged negligent conduct of their attorneys"); *Coastal Orthopaedic Inst., P.C. v. Bongiorno*, 61 Mass. App. Ct. 55, 63, 807 N.E.2d 187, 194 (2004) ("such legal fees must be proximately caused by the alleged act of malpractice").

Nothing in the complaint suggests that plaintiff suffered any harm as a result of Perluss's failure to supervise a young associate in the collection action. Nothing in the complaint even remotely suggests any connection between that failure and either the negligence or the harm alleged here. Perluss argues that the very hiring of another attorney to finish the job he had been hired to do somehow caused harm to plaintiff. Perluss's argument on this point overlooks the fact that plaintiff's need to hire some lawyer to continue prosecuting the collection action was not in any way caused by the negligence that ultimately caused the harm alleged here. It certainly was not caused by the need to "ameliorate harm" already suffered. Plaintiff was engaged in litigation and needed a lawyer to complete discovery and prepare for trial.

Perluss cites four aspects of legal services performed by successor counsel, each of which he contends constituted actual appreciable harm as a result of his negligence. Perluss's Memorandum at 9. Successor counsel (1) undertook "independent investigation into the legal and factual basis of the claim" against plaintiff's partners (2) filed plaintiff's claims against the partners, (3) researched the viability of those claims, and (4) advised plaintiff on the applicable statutes of limitation. None of this work was caused by anything Perluss had done wrong. It all would have been necessary even if

plaintiff had never hired Perluss in the first place, because it was essential to competent representation of plaintiff in his claims against the partners. This work was not an attempt to "ameliorate the harm" caused by Perluss, but to obtain redress from the harm caused by plaintiff's deceitful partners. Whichever attorney represented plaintiff would have had to perform the same services in any event. Successor counsel merely picked up where the predecessor left off as local counsel for GP&H in the collection action.

Perhaps the clearest proof that the work done by Perluss's successor was not caused by the negligence alleged in this action is that defendant Denniston is charged with exactly the same negligence, yet Denniston was not fired as plaintiff's counsel in the collection action. He continued to represent plaintiff in the collection action until he left GP&H, and other attorneys at GP&H remained involved until that case came back down from the Ninth Circuit in 1995. Complaint, ¶ 29.

Moreover, nothing in the complaint suggests that Perluss's negligence caused the prosecution of either the collection action or the partnership action to be more expensive than it would have been if Perluss had handled them himself. Indeed, if successor counsel was more reasonably priced, or more efficient, firing Perluss may have saved plaintiff considerable expense. As the question of whether new counsel cost more or less than Perluss could be answered without regard to Perluss's negligence, there is no basis for inferring that the cost of new counsel had anything to do with Perluss's negligence.

### B. Perluss Mistakenly Asserts That Plaintiff Has Alleged Matters That Are Nowhere In The Complaint And Are Directly Contrary To The Complaint

Although Perluss refers to plaintiff's "explicit assertions as to knowledge of existence of the viability of the underlying claim going back to 1989" (Perluss's Memorandum at 7), there is no such assertion in the complaint. To the contrary, the

complaint alleges that plaintiff had no such knowledge until late 1992. Complaint ¶ 31. All plaintiff knew in 1989 was that he belonged to an investment partnership, which at some point could generate profits that he would be entitled to share. Just as knowing that there is a risk of future trouble does not constitute notice of actual injury that might not ever happen, knowing that there is a potential for future profit does not constitute "knowledge of existence of the viability" of a claim for profits that might not yet have been realized.

Perluss's assertion that plaintiff "has specifically alleged that he had the requisite notice of malpractice" no later than the filing of the partnership action in 1994 (Perluss's Memorandum at 7), is also baseless. Plaintiff alleged awareness in 1994 of a risk that his partnership claims might *become* untimely if he waited too long before asserting them. Nothing in the complaint suggests that he had any awareness that they might already be untimely.

### C. There Is No Basis For Judicial Estoppel Here

Perluss argues that plaintiff should be judicially estopped from "claiming he was unaware of the nature of his harm and the purported source of it," because plaintiff had argued in the partnership action that he learned the basis for his claims in that action in 1992. Perluss's Memorandum at 7-8. This argument makes no sense because "the nature of his harm" in the partnership action was his partners' theft of a profit distribution in 1988 and "the nature of his harm" in this action is his attorneys' failure to take appropriate steps to preserve his rights against his partners. There is no logical connection between when plaintiff learned of one and when he learned of the other.

The rule in this Circuit is that "Judicial estoppel should be employed when a litigant is 'playing fast and loose with the courts,' and when 'intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'" *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 212 (1st Cir. 1987), quoting *Scarano v. Central R. Co. of N.J.*, 203 F.2d 510, 513 (3d Cir. 1953). However, as this is a diversity case governed by state law, it might be more appropriate for this court to apply Massachusetts estoppel rules. *Alternative System Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 32 (1st Cir. 2004).

Massachusetts requires two fundamental elements to establish judicial estoppel:

> [T]wo fundamental elements are widely recognized as comprising the core of a claim of judicial estoppel. First, the position being asserted in the litigation must be "directly inconsistent," meaning "mutually exclusive" of the position asserted in a prior proceeding. . . . We have rejected claims of judicial estoppel where the position being asserted is not directly contrary to the position previously asserted. . . . Second, the party must have succeeded in convincing the court to accept its prior position. . . . Where the court has found in favor of that party's position in the prior proceeding, "judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'"

*Otis v. Arbella Mutual Ins. Co.*, 443 Mass. 634, 640-641, 824 N.E.2d 23, 29-30 (2005) (citations omitted). Neither element is present here.

1. **Plaintiff has not asserted contrary positions**

Judicial estoppel cannot apply here because nothing plaintiff has said in this action is contrary to any position he took in the partnership action. Certainly, nothing in the complaint shows any such contradiction. As plaintiff did not take any position in the partnership action based on his attorneys' failure to protect his rights, there is no possibility of contradiction by the position he asserts here.

## 2. Plaintiff's position on when he discovered his partners' theft was rejected

Judicial estoppel applies only where the court in the prior action was persuaded by the position asserted there, because it is judicial acceptance that makes it unseemly to allow the assertion of a contrary position elsewhere later. The California court did not accept plaintiff's position about when he learned about his partners' theft. By concluding that plaintiff should have learned about the theft in 1989, when he actually learned about it became irrelevant.

## 3. Other reasons why judicial estoppel should not apply here

In *Otis,* Massachusetts also recognized circumstances when it would be inequitable to apply judicial estoppel, such as "when a party's prior position was based on inadvertence or mistake," when "the position adopted in the first suit was clearly wrong yet had been advanced in good faith," or where "the new, inconsistent position is the product of information neither known nor readily available to [the party] at the time the initial position was taken." 443 Mass. at 642, 824 N.E.2d at 30. Given that plaintiff did not know in 1989 about his partners' theft from him, and neither knew nor could have known until 2003 that he should have known in 1989, all three of these theories would excuse any apparent inconsistency between his statements in the partnership action that he did not know in 1989 and his statements here that the California court found he should have known in 1989.

An earlier Massachusetts case had established an even better basis for refusing judicial estoppel here:

> The principle that a party maintaining a position in one judicial proceeding is not permitted to assume a contrary position in a subsequent judicial proceeding concerning the same subject . . . cannot logically be applied in these circumstances where the plaintiff is attempting to show that her

> position in the [first] action was the result of the defendant's malpractice. To apply estoppel in the way defendant suggests would shield him from possible malpractice without inquiring whether the malpractice claim has merit. This would create the anomaly of permitting possible wrongdoing by an attorney, of which the plaintiff had no knowledge, to constitute the basis for barring a later claim by the plaintiff that may have merit.

*Meyer v. Wagner*, 429 Mass. 410, 420, 709 N.E.2d 784, 791 (1999). As neither of the elements of judicial estoppel is present, yet there are several equitable grounds for refusing to apply it, this court should not be apply an inappropriate estoppel to defeat plaintiff's claims.

### D. Perluss, On The Other Hand, Should Be Estopped From Denying Responsibility For His Client's Failure To Conduct The Investigation He Asked Perluss To Do

Perluss then contends that plaintiff should be estopped[13] from arguing that he was harmed in 2003 by Perluss's failure to make a reasonable investigation of plaintiff's potential claims before 1993. Perluss's Memorandum at 8. The argument runs like this: plaintiff alleges that he lost the partnership action, because the California court held that plaintiff was on *constructive* notice of his claims against his partners in 1989, because plaintiff *should* have conducted a more diligent investigation (specifically, plaintiff should have read documents that had never been sent to him but were on file with the S.E.C.); since plaintiff has alleged that the court held that he should have conducted an investigation, plaintiff should not be permitted to deny that he actually had the knowledge

---

[13] This argument is based on collateral estoppel, or issue preclusion, which can only apply when an issue has been "actually litigated" in an earlier action. *Willhauck v. Hapin*, 953 F.2d 689, 705 (1st Cir. 1991). Perluss mistakenly assumes that the question of whether or not plaintiff had a duty to research S.E.C. filings by Aura for hints of partnership transactions was actually litigated. The complaint does not specifically allege that this issue was never actually litigated, but could be amended if necessary to allege that the existence of such a duty was not "the product of full litigation and careful decision" in the partnership action. *Miles v. Aetna Casualty & Surety Co.*, 412 Mass. 424, 427, 589 N.E.2d 314, 317 (1992).

- 17 -

that he would have gained from such an investigation; therefore, plaintiff should not be permitted to claim that Perluss was in any way responsible for plaintiff's failure to take timely action on the basis of such knowledge.

This argument starts by talking about what plaintiff *should have* known when, but then jumps the track and talks about what plaintiff "is deemed to have known." Perluss's conclusion is exactly the opposite of the logical effect of his premises. Given that plaintiff lost the partnership action because he should have conducted a more diligent investigation, and given that Perluss was one of the attorneys whose job it was to advise plaintiff about any investigations he needed to make, Perluss's instruction to plaintiff to refrain from making any such investigation not only cannot absolve Perluss from any malpractice claim; it *establishes* malpractice. As a result of his instruction to plaintiff not to investigate, and his failure to conduct such an investigation on plaintiff's behalf, it is Perluss who should be estopped from denying responsibility for the harm that plaintiff later suffered as a result of the lack of investigation. Imposing an estoppel on plaintiff instead would be contrary "to 'fairness,' which is 'the decisive consideration' in determining whether to apply offensive collateral estoppel. *In re Cohen*, 435 Mass. 7, 16, 753 N.E.2d 799, 806 (2001).

## V. CONCLUSION

The harm the complaint alleges that plaintiff suffered as a result of Perluss's malpractice is the appellate reversal, in September 2003, of what otherwise would have amounted to a very substantial judgment in plaintiff's favor. The complaint alleges that the reversal was based on a determination that plaintiff should learned the facts supporting his claims against his partners sooner than 1992 because he should have done

a more diligent investigation, as a result of which he might have learned the facts as early as 1989. The complaint alleges that plaintiff had consulted Perluss, long before the partnership claims were barred, about how to protect his interest in the investment partnership, and that Perluss's negligence was directly responsible for plaintiff's claims eventually being rejected as untimely.

Nothing in the complaint suggests that plaintiff knew before 2003 that the applicable statutes of limitation had started running as long ago as 1989. Nothing in the complaint suggests that plaintiff was even on notice before 2003 that his failure (or his attorneys' failure) to obtain documents from the S.E.C. before 1992 even created a risk. Plaintiff believed that his partnership claims were timely because he only learned the facts underlying them in late 1992. If that belief was reasonable, then plaintiff had no notice that he had been harmed by Perluss's negligence until 2003. *See Rosen Construction Ventures, Inc. v. Mintz, Levin et al.*, 364 F.3d 399, 410 (1st Cir. 2004). Even if plaintiff's belief in the timeliness of his partnership claims had been unreasonable, he would still not have been on notice of anything but risk, until 2003.

Perluss should be estopped from asserting otherwise because it was his own failure to investigate that caused the delay in plaintiff's discovery of the facts. Nothing in the complaint suggests that any of the legal work performed by Perluss's successor counsel was caused by Perluss's negligence or was intended to ameliorate harm caused by such negligence, as distinct from the continuing process of representing plaintiff's interests against others.

To whatever extent the complaint does not specifically and explicitly allege the contrary of the adverse inferences Perluss seeks to draw from it, it could be amended to

add such denials without in any way undercutting or contradicting what is already there. Amendment should not be necessary, however, because all reasonable inferences should be drawn in plaintiff's favor, not in defendant's. Out of abundance of caution, plaintiff asks that, if the court is inclined to allow the motion to dismiss, leave to amend be granted.

DATED:   April 28, 2005

> Respectfully submitted,
>
> MICHAEL FRANKSTON
>
> By his attorneys,
>
> _____
> Joshua Tropper (BBO # 652921)
> (Application for admission
> to this court pending)
> GAMBRELL & STOLZ, L.L.P.
> Monarch Plaza, Suite 1600
> 3414 Peachtree Road
> Atlanta, GA 30326
> (404) 577-6000

## CERTIFICATE OF SERVICE

I, JOSHUA TROPPER, hereby certify that a true copy of the above document was served upon the attorney of record for each other party by Express Mail on April 28, 2005.

_____
Joshua Tropper (BBO # 652921)

DATED:   April 28, 2005